IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| State of MAINE DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>221 State Street<br>Augusta, ME 04333<br><br>State of MARYLAND DEPARTMENT OF HEALTH AND MENTAL HYGIENE<br>201 West Preston Street<br>Baltimore, Maryland  21201<br><br>State of NEW JERSEY DEPARTMENT OF HUMAN SERVICES<br>222 South Warren Street<br>Trenton, NJ 08625-0700<br><br>-and-<br><br>State of OKLAHOMA HEALTH CARE AUTHORITY<br>4545 N. Lincoln Blvd, Ste. 124<br>Oklahoma City, OK 73105<br>405-522-7300<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>200 Independence Avenue S.W.<br>Washington, D.C. 20201<br><br>-and-<br><br>MICHAEL O. LEAVITT, Secretary of the United States Department of Health and Human Services<br>200 Independence Avenue S.W.<br>Washington, D.C. 20201<br><br>*Defendants*. | **COMPLAINT**<br><br>Civ. No. _____ |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

## NATURE OF ACTION

1. Plaintiffs Maine Department of Health and Human Services ("Maine"), Maryland Department of Health and Mental Hygiene ("Maryland"), New Jersey Department of Human Services ("New Jersey"), and Oklahoma Health Care Authority (collectively, the "Plaintiffs") are the agencies responsible for administering the Medicaid program in their respective States. Each of the plaintiff agencies receives federal reimbursement for case management services provided to Medicaid beneficiaries in the State.

2. Defendants the United States Department of Health and Human Services ("HHS"), and Michael O. Leavitt, in his capacity as Secretary of HHS (together, the "Defendants"), promulgated an Interim Final Rule on December 4, 2007, regarding the provision of case management services in the Medicaid program. *See* 72 Fed. Reg. 68,077 (Dec. 4, 2007) (interim final rule, to be codified at 42 C.F.R. pts. 431, 440, and 441) (the "Interim Final Rule").

3. In this Complaint, Plaintiffs seek injunctive and declaratory relief against provisions of the Interim Final Rule ("the Challenged Provisions") that jeopardize the health and safety of Medicaid beneficiaries, limit state flexibility to provide case management in the most effective and efficient manner, and result in a substantial reduction in federal funds for the provision of Medicaid case management services.

4. The Challenged Provisions of the Interim Final Rule are not in accordance with Title XIX of the Social Security Act, including amendments thereto made by the Deficit Reduction Act of 2005; are an arbitrary and capricious exercise, taken without regard to procedure required by law and in excess of Defendants' statutory jurisdiction, authority, or

limitations, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C),(D); and were adopted in violation of the APA's notice and comment requirements for informal rulemaking, 5 U.S.C. § 553.

5. With one exception, the provisions of the Interim Final Rule, including the Challenged Provisions, purport to go into effect on March 3, 2008.

## PARTIES

6. Plaintiff Maine Department of Health and Human Services is a state agency responsible for administering the Medicaid program in the State of Maine.

7. Plaintiff Maryland Department of Health and Mental Hygiene is a state agency responsible for administering the Medicaid program in the State of Maryland.

8. Plaintiff New Jersey Department of Human Services is a state agency responsible for administering the Medicaid program in the State of New Jersey.

9. Plaintiff Oklahoma Health Care Authority is a state agency responsible for administering the Medicaid program in the State of Oklahoma.

10. Defendant the United States Department of Health and Human Services ("HHS") is an executive branch agency of the United States. The Centers for Medicare and Medicaid Services ("CMS") is a federal agency within HHS. Through CMS, HHS is the federal agency responsible for administering the Medicaid program.

11. Defendant Michael O. Leavitt is the Secretary of HHS. In that capacity, he is responsible for the overall administration of HHS. Secretary Leavitt is sued in his official capacity.

## JURISDICTION AND VENUE

12.  This case arises under the APA, 5 U.S.C. §§ 553, 702, 704, and 706(2), and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

13.  Venue in this Court is proper under 28 U.S.C. § 1391(b) & (e), because Defendants reside in this District and because the actions giving rise to this case occurred here.

## FACTS

### Case Management in the Medicaid Program

14.  The Medicaid program, established in Title XIX of the Social Security Act ("SSA"), is a cooperative state-federal program designed to enable States to furnish medical assistance to certain low-income, elderly, and disabled individuals whose income and resources are inadequate to pay for necessary medical services. *See* SSA § 1901, *codified at* 42 U.S.C § 1396. The Medicaid program is administered by each State in accordance with a Medicaid state plan that is reviewed and approved by the Defendants. States must comply with federal requirements specified in the SSA, as well as the regulations and program guidance issued by the Defendants pursuant to their authority under the SSA.

15.  Under Medicaid, the federal government and the States share the cost of providing medical assistance to Medicaid-eligible persons, with federal financial participation ("FFP") ranging from fifty to eighty-three percent. *See* SSA § 1905(b), *codified at* 42 U.S.C. § 1396d(b). In addition, the costs of administrative activities are reimbursed at fifty percent. *See* SSA § 1903(a), *codified at* 42 U.S.C. § 1396b(a).

16.  Since 1986, "case management" and "targeted case management" have been services that a State may elect to provide as a Medicaid benefit to Medicaid-eligible beneficiaries. *See* Consolidated Omnibus Reconciliation Act of 1985 (COBRA), Pub. L. No.

99-272, 100 Stat. 82 (1986); Tax Reform Act of 1986 (TEFRA), Pub. L. No. 99-514, § 1895(c)(3), 100 Stat. 2085 (1986). "Case management" is a service that assists beneficiaries in gaining access to needed medical, social, educational and other services. *See* 42 U.S.C. § 1396c(a)(19). "Targeted case management" is case management that is targeted to beneficiaries in a particular geographic location or with a particular diagnosis or condition, such as individuals with developmental disabilities, individuals with mental illness, individuals with HIV/AIDS, children at risk of abuse and neglect, and foster care children in the custody of the State. *See* 42 U.S.C. § 1396n(g).

17. Even prior to the 1986 addition of "case management" and "targeted case management" as services under Title XIX, States had the authority to conduct case management as an administrative activity and to claim reimbursement for such activities at the 50 percent federal match rate for administration. *See* State Medicaid Manual § 4302.

18. Even prior to the 1986 addition of "case management" and "targeted case management" as services under Title XIX, States had the ability to provide services to certain Medicaid beneficiaries under the authority of SSA § 1915(c), *codified at* 42 U.S.C. § 1396n(c), which provides that a State plan may include as "medical assistance" payment for part or all of the cost of home or community-based services, including case management, to individuals who would otherwise require the level of care provided in a hospital, a nursing facility, or an intermediate care facility for the mentally retarded.

19. On January 19, 2001, CMS issued State Medicaid Director Letter 01-013, which "clarif[ies] HHS policy on targeted case management services under the Medicaid program as it relates to an individual's participation in other social, educational, or other programs." The letter states that "States may use eligibility for, or participation in, a state social

welfare program or other programs as the basis for defining the target population among Medicaid eligible individuals." The letter states that allowable case management services include assessment, care planning, referral and linkage, and monitoring and follow-up and that "Medicaid can be used to supplement these activities for Medicaid eligible individuals when they are embedded in another social or other program." *Id.*

20. As part of the Deficit Reduction Act of 2005 ("DRA"), Congress clarified the scope of case management and targeted case management services. *See* Pub. L. No. 109-171, § 6052, 120 Stat. 4 (2006). Section 6052 defines case management to include: (a) assessment of an eligible individual to determine the need for any medical, educational, social or other service; (b) development of a specific care plan based on the assessment; (c) referral and related activities to help an individual obtain needed services; and (d) monitoring and follow-up activities. *See* DRA § 6052(a)(2)(A)(ii). The DRA states that case management does not include the "direct delivery of an underlying medical, educational, social, or other service to which an eligible individual has been referred." *Id.* at (a)(2)(A)(iii).

21. Section 6052 further provides that "[i]n accordance with section 1902(a)(25) [of the SSA], Federal financial participation only is available under this title for case management services or targeted case management services if there are no other third parties liable to pay for such services, including as reimbursement under a medical, social, educational, or other program," DRA at § 6052(a)(4)(A), and that a State "shall allocate the costs of any part of such services which are reimbursable under another federally funded program in accordance with OMB Circular A-87 (or any related or successor guidance or regulations regarding allocation of costs among federally funded programs) under an approved cost allocation program." *Id.* at (a)(4)(B).

22. The DRA was enacted on February 8, 2006. The case management provisions were effective retroactive to January 1, 2006. The DRA provides that "[t]he Secretary shall promulgate regulations to carry out the amendment made by subsection (a) which may be effective and final immediately on an interim basis as of the date of publication of the interim final regulation. If the Secretary provides for an interim final regulation, the Secretary shall provide for a period of public comments on such regulation after the date of publication. The Secretary may change or revise such regulation after completion of the period of public comment." *Id.* at (b).

23. The Secretary promulgated the Interim Final Rule on December 4, 2007, nearly two years after the DRA's case management provisions went into effect. The Secretary did not provide notice or seek comment on the Interim Final Rule prior to its publication in the Federal Register on December 4, 2007.

24. Pursuant to SSA § 1915(c), *codified at* 42 U.S.C. § 1396n(c), the Secretary has authority to waive certain provisions of Title XIX otherwise applicable to Medicaid state plans, to provide States with greater flexibility over the delivery of home and community-based services ("HCBS") to individuals who, but for those services, would require the level of care provided in a hospital, nursing facility, or intermediate care facility. HCBS programs operated by States under the Secretary's § 1915(c) waiver authority are known as "Section 1915(c) waivers." Although the Interim Final Rule does not expressly state that its definition of "case management" will apply to Section 1915(c) waivers, CMS has since instructed States that case management provided through Section 1915(c) waivers will be subject to all of the requirements set forth in the Interim Final Rule.

## The Challenged Provisions of the Interim Final Rule
## Go Beyond the Secretary's Authority Under the DRA

25. The Challenged Provisions of the Interim Final Rule, described in paragraphs 27 through 34 of this Complaint, are not in accordance with the DRA and will have a detrimental impact on beneficiaries and substantially reduce federal funding to the Plaintiffs.

26. The DRA provides that "case management services" shall not include "the direct delivery of an underlying medical, educational, social, or other service to which an eligible individual has been referred," and provides examples of such underlying services with respect to the foster care program. *See* DRA § 6052(a)(2)(A)(iii). However, as described in the paragraphs below, the Interim Final Rule sets forth additional exclusions from the definition of case management services that are not in accordance with the DRA.

27. **Interim 42 C.F.R. § 441.18(c)(3)** is not in accordance with the DRA because it excludes not only "the direct delivery of foster care services," DRA § 6052(a)(2)(A)(iii), but also all case management activities that "are integral to the administration of foster care programs." The preamble to the rule demonstrates that CMS considers any activity, including "case management" itself, to be an activity "integral to the administration of foster care programs" if it is performed by a foster care worker. 72 Fed. Reg. at 68,087.

28. **Interim 42 C.F.R. § 441.18(c)(4)** is not in accordance with the DRA because it excludes not only the direct delivery of underlying services, DRA § 6052(a)(2)(A)(iii), but all case management activities that "are integral to the administration of another non-medical program, such as a guardianship, child welfare/child protective services, parole, probation, or special education program except for case management that is included in an individualized education plan or individualized family service plan consistent with § 1903(c) of the [Social

Security] Act." The rule also is not in accordance with DRA § 6052(a)(4)(A), in that other non-medical programs are not legally liable third parties within the meaning of SSA § 1902(a)(25).

29. **Interim 42 C.F.R. § 441.18(c)(5)** is not in accordance with the DRA because it provides that "[a]ctivities that meet the definition of case management services in § 440.169 and under the approved State plan cannot be claimed as administrative activities under § 433.15(b)." The DRA, in contrast, does not authorize the Secretary to restrict the States' longstanding ability to be reimbursed for case management as an administrative activity. To the contrary, DRA § 6052(a)(4)(B) requires a State to "allocate the costs of any part of such services which are reimbursable under another federally funded program in accordance with OMB Circular A-87 (or any related or successor guidance or regulations regarding allocation of costs among federally funded programs) under an approved cost allocation program."

30. **Interim 42 C.F.R. § 441.18(a)(3)** is not in accordance with the DRA because it provides that a State may not "compel an individual to receive case management services, condition receipt of case management (or targeted case management) services on receipt of other Medicaid services, or condition receipt of other Medicaid services on receipt of case management (or targeted case management) services." The DRA, in contrast, does not authorize the Secretary to restrict the longstanding and quite common practice among States of requiring the assessment, plan development, referral, and monitoring of vulnerable populations such as individuals with mental illness, individuals with developmental disabilities, frail elderly, and children in the custody of the State. These services are almost always mandatory for individuals participating in Section 1915(c) waivers, which require that services be provided pursuant to a plan of care and which obligate the State to assure the health and safety of waiver participants receiving services in their homes and other community settings.

31. **Interim 42 C.F.R. § 441.18(a)(5)** is not in accordance with the DRA because it provides that the State must provide comprehensive case management services to an individual through a single case manager. The DRA, in contrast, does not authorize the Secretary to limit Medicaid beneficiaries to a single case manager. Because case managers are generally knowledgeable and familiar with the provider networks for specific needs and diagnoses (*e.g.*, HIV/AIDS, mental illness, developmental disabilities, frail elderly), it is possible that beneficiaries who fall into more than one of these categories will have more than one case manager.

32. **Interim 42 C.F.R. § 441.18(a)(8)(vi)** is not in accordance with the DRA because it requires that the State must have an approved Medicaid state plan amendment identifying all beneficiaries receiving case management services and that such amendment must specify that "rates are calculated [employing] a unit of service that does not exceed 15 minutes." The DRA, in contrast, does not authorize the Secretary to require any particular form of billing for this service. It is quite common for States to pay for case management on a weekly or monthly basis.

33. **Interim 42 C.F.R. § 440.169(c)** is not in accordance with the DRA because it provides that case management may only be provided to an individual "transitioning to a community setting" during the last 60 days of a Medicaid-covered institutional stay that is 180 consecutive days or longer, or the last 14 days of a covered institutional stay of less than 180 consecutive days. The DRA, in contrast, does not authorize the Secretary to restrict the amount of time that case management may be provided to an institutionalized individual transitioning to a community. Many States have approved Medicaid state plans providing for up to 180 days of transitional case management.

34. In addition, the Plaintiffs challenge **Interim 42 C.F.R. § 441.18(a)(8)** to the extent that it requires a State to have an approved Medicaid state plan amendment for each group receiving case management services as of the effective date of the rule. The rule will become effective ninety days after publication in the Federal Register; the plan amendment approval process normally takes between 90 and 270 days following the submission of a proposed state plan amendment to CMS.

35. In addition to violating the DRA, the Challenged Provisions are also not authorized under any other provision of Title XIX.

### Plaintiff State Agencies and the Medicaid Beneficiaries They Serve are Harmed by the Challenged Provisions

36. Plaintiff state agencies are adversely affected and aggrieved by the Challenged Provisions.

37. The Challenged Provisions will eliminate federal Medicaid funding for the case management services that Maine provides to Medicaid-eligible individuals in the foster care program and other non-medical programs, including adult guardian and juvenile probation; it will limit individuals to one case manager, even though that case manager may not be familiar with the relevant diagnoses and provider networks; it will require the State to modify its reimbursement systems so that claims for the remaining case management programs will be billed in 15-minute increments; and it will affect the operation of the State's 1915(c) waivers because the State will not be able to require that participants receive case management services.

38. The Challenged Provisions will eliminate federal Medicaid funding for the case management services that Maryland provides to Medicaid-eligible individuals in its child welfare programs and other non-medical programs; it will eliminate federal Medicaid funding for administrative activities claimed by Maryland; it will limit individuals to one case manager, even

though that case manager may not be familiar with the relevant diagnoses and provider networks; it will require the State to modify its reimbursement systems so that claims for the remaining case management programs will be billed in 15-minute increments; it will affect the case management provided to individuals transitioning from an institutional to a community setting by limiting the time period during which the service can be provided to a maximum of 60 days; and it will affect the operation of the State's 1915(c) waivers because the State will not be able to require that participants receive case management services.

39.     The Challenged Provisions will eliminate federal Medicaid funding for the administrative activities that New Jersey claims in its child welfare programs; it will limit individuals to one case manager, even though that case manager may not be familiar with the relevant diagnoses and provider networks; it will require the State to modify its reimbursement systems so that claims for the remaining case management programs will be billed in 15-minute increments; it will affect the case management provided to individuals transitioning from an institutional to a community setting by limiting the time period during which the service can be provided to a maximum of 60 days; and it will affect the operation of the State's 1915(c) waivers because the State will not be able to require that participants receive case management services.

40. The Challenged Provisions will eliminate federal Medicaid funding for the case management services that Oklahoma provides to Medicaid-eligible individuals in its child welfare programs and other non-medical programs; it will eliminate federal Medicaid funding for administrative activities claimed by Oklahoma; it will limit individuals to one case manager, even though that case manager may not be familiar with the relevant diagnoses and provider networks; it will require the State to modify its reimbursement systems so that claims for the remaining case management programs will be billed in 15-minute increments; it will affect the

case management provided to individuals transitioning from an institutional to a community setting by limiting the time period during which the service can be provided to a maximum of 60 days; and it will affect the operation of the State's 1915(c) waivers because the State will not be able to require that participants receive case management services.

## COUNT I
**(Violation of APA Notice-and-Comment Rulemaking, 5 U.S.C. §§ 553, 706(2)(A),(C),(D))**

41. Plaintiffs repeat and re-allege every allegation in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. The Interim Final Rule constitutes final agency action under the APA, 5 U.S.C. § 704.

43. Defendants' rules are subject to the rulemaking requirements of the APA. *See* 5 U.S.C. § 553; 36 Fed. Reg. 2532 (Feb. 5, 1971).

44. The Challenged Provisions do not fall within the provision of DRA § 6052(b).

45. The Challenged Provisions were not promulgated in accordance with the APA's notice-and-comment procedures as set forth in 5 U.S.C. § 553.

46. Defendants' actions were in violation of 5 U.S.C. § 553 and were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

47. Defendants' actions were in violation of 5 U.S.C. § 553 and were "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

48. Defendants' actions were in violation of 5 U.S.C. § 553 and were "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

## COUNT II

### (Arbitrary and Capricious Agency Action, 5 U.S.C. § 706(2)(A))

49. Plaintiffs repeat and re-allege every allegation in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

50. The Interim Final Rule constitutes final agency action under the APA, 5 U.S.C. § 704. Under the APA, 5 U.S.C. § 706(2)(A), this Court is required to hold unlawful and to set aside final agency action that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."

51. The Challenged Provisions are arbitrary, capricious, and not in accordance with § 6052 of the DRA or any other provision of Title XIX.

## COUNT III

### (Agency Action in Excess of Statutory Jurisdiction, Authority, or Limitations, 5 U.S.C. § 706(2)(C))

52. Plaintiffs repeat and re-allege every allegation in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

53. The Interim Final Rule constitutes final agency action under the APA, 5 U.S.C. § 704. Under the APA, 5 U.S.C. § 706(2)(C), this Court is required to hold unlawful and to set aside final agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

54. The Challenged Provisions are in excess of statutory jurisdiction, authority, or limitations set forth in § 6052 of the DRA or any other provision of Title XIX.

## COUNT IV
### (Abuse of Discretion, 5 U.S.C. § 706(2)(A))

55. Plaintiffs repeat and re-allege every allegation in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

56. The Interim Final Rule constitutes final agency action under the APA, 5 U.S.C. § 704. The Interim Final Rule does not provide a reasonable transition period for States to modify their case management programs to comply with the Challenged Provisions.

57. The failure to include a reasonable transition period is an abuse of CMS's discretion and violates the APA, 5 U.S.C. § 706(2)(A).

58. The Interim Final Rule was promulgated by CMS before providing States any opportunity for consultation or comment on the Challenged Provisions.

59. The failure to provide States any opportunity for consultation or comment on the Challenged Provisions prior to promulgation of the Interim Final Rule is an abuse of CMS's discretion and violates the APA, 5 U.S.C. § 706(2)(A).

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiffs ask this Court to award relief as follows:

**A. Declaratory Judgment**

Plaintiffs ask this Court to issue a declaratory judgment that the Challenged Provisions of the Interim Final Rule are unlawful and without effect.

**B. Injunctive Relief**

Plaintiffs ask this Court to enjoin Defendants and their agents, employees, successors in office, and all persons acting in concert or participation with them from enforcing or giving effect to the Challenged Provisions of the Interim Final Rule.

C.  **Other Relief**

Plaintiffs ask this Court to:

1. Order a speedy hearing of this matter and advance it on the calendar;

2. Award Plaintiffs their costs and reasonable attorneys' fees of this action;

3. Retain jurisdiction over this action for such additional and supplemental relief as may be required to enforce the order and judgment; and

4. Award Plaintiffs such other relief as may be just and proper.

Respectfully submitted,

_____
Jay T. Smith (D.C. Bar No. 418559)
Caroline M. Brown (D.C. Bar No. 438432)
Joseph Zambuto, Jr. (D.C. Bar No. 484542)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
(202) 662-6000

*Attorneys for Plaintiffs*

DATED: February 29, 2008.

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

State of Maine Department of Health and Human Services, State of Maryland Department of Health and Mental Hygiene, State of New Jersey Department of Human Services, and State of Oklahoma Health Care Authority

## DEFENDANTS

United States Department of Health and Human Services, and Michael O. Leavitt, Secretary of the United States Department of Health and Human Services

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF — 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) — 11001
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Caroline M. Brown
Jay T. Smith
Joseph Zambuto Jr.
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
(202) 662-6000

Case: 1:08-cv-00363
Assigned To : Kennedy, Henry H.
Assign. Date : 2/29/2008
Description: Admn. Agency review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
- ☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ◉ C. Administrative Agency Review
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- (●) 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
5 U.S.C. Sections 553, 702, 706. This is a challenge to HHS's authority to promulgate Medicaid case management interim final rule effective 3/3/2008.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 0   Check YES only if demanded in complaint   JURY DEMAND: YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 29 Feb 2008   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.