**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Commonwealth of KENTUCKY CABINET FOR HEALTH AND FAMILY SERVICES, DEPARTMENT OF MEDICAID SERVICES<br>275 East Main Street<br>Frankfort, KY 40621<br><br>State of MAINE DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>221 State Street<br>Augusta, ME 04333<br><br>State of MARYLAND DEPARTMENT OF HEALTH AND MENTAL HYGIENE<br>201 West Preston Street<br>Baltimore, Maryland 21201<br><br>State of NEW JERSEY DEPARTMENT OF HUMAN SERVICES<br>222 South Warren Street<br>Trenton, NJ 08625-0700<br><br>State of NEW YORK STATE DEPARTMENT OF HEALTH<br>Corning Tower<br>Empire State Plaza<br>Albany, NY 12237<br><br>State of OKLAHOMA HEALTH CARE AUTHORITY<br>4545 N. Lincoln Blvd, Ste. 124<br>Oklahoma City, OK 73105<br><br>-- and --<br><br>State of TENNESSEE BUREAU OF TENNCARE<br>310 Great Circle Road<br>Nashville, TN 37243<br><br>*Plaintiffs*,<br><br>v. | **AMENDED COMPLAINT**<br>Civ. No. 01:08-00363 (HHK) |

|  |  |
|---|---|
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>200 Independence Avenue S.W.<br>Washington, D.C. 20201<br><br>      -and-<br><br>MICHAEL O. LEAVITT, Secretary of the United States Department of Health and Human Services<br>200 Independence Avenue S.W.<br>Washington, D.C. 20201<br><br>                  *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### NATURE OF ACTION

1.     Plaintiffs Kentucky Cabinet for Health and Family Services, Department of Medicaid Services ("Kentucky"), Maine Department of Health and Human Services ("Maine"), Maryland Department of Health and Mental Hygiene ("Maryland"), New Jersey Department of Human Services ("New Jersey"), New York State Department of Health ("New York"), Oklahoma Health Care Authority ("Oklahoma"), and Tennessee Bureau of TennCare ("Tennessee") (collectively, the "Plaintiffs") are the agencies responsible for administering the Medicaid program in their respective States. Each of the plaintiff agencies receives federal reimbursement for case management services provided to Medicaid beneficiaries in the State.

2.     Defendants the United States Department of Health and Human Services ("HHS"), and Michael O. Leavitt, in his capacity as Secretary of HHS (together, the "Defendants"), promulgated an Interim Final Rule on December 4, 2007, regarding the provision of case management services in the Medicaid program. *See* 72 Fed. Reg. 68,077 (Dec. 4, 2007) (interim final rule, to be codified at 42 C.F.R. pts. 431, 440, and 441) (the "Interim Final Rule").

3. In this Complaint, Plaintiffs seek injunctive and declaratory relief against provisions of the Interim Final Rule ("the Challenged Provisions") that jeopardize the health and safety of Medicaid beneficiaries, limit state flexibility to provide case management in the most effective and efficient manner, and result in a substantial reduction in federal funds for the provision of Medicaid case management services.

4. The Challenged Provisions of the Interim Final Rule are not in accordance with Title XIX of the Social Security Act, including amendments thereto made by the Deficit Reduction Act of 2005; are an arbitrary and capricious exercise, taken without regard to procedure required by law and in excess of Defendants' statutory jurisdiction, authority, or limitations, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C),(D); and were adopted in violation of the APA's notice and comment requirements for informal rulemaking, 5 U.S.C. § 553.

5. With one exception, the provisions of the Interim Final Rule, including the Challenged Provisions, took effect on March 3, 2008.

**PARTIES**

6. Plaintiff Kentucky Cabinet for Health and Family Services, Department of Medicaid Services is a state agency responsible for administering the Medicaid program in the State of Kentucky.

7. Plaintiff Maine Department of Health and Human Services is a state agency responsible for administering the Medicaid program in the State of Maine.

8. Plaintiff Maryland Department of Health and Mental Hygiene is a state agency responsible for administering the Medicaid program in the State of Maryland.

9. Plaintiff New Jersey Department of Human Services is a state agency responsible for administering the Medicaid program in the State of New Jersey.

10. Plaintiff New York State Department of Health is a state agency responsible for supervising the administration of the Medicaid program in the State of New York.

11. Plaintiff Oklahoma Health Care Authority is a state agency responsible for administering the Medicaid program in the State of Oklahoma.

12. Plaintiff Tennessee Bureau of TennCare is a state agency responsible for administering the Medicaid program in the State of Tennessee.

13. Defendant the United States Department of Health and Human Services ("HHS") is an executive branch agency of the United States. The Centers for Medicare and Medicaid Services ("CMS") is a federal agency within HHS. Through CMS, HHS is the federal agency responsible for administering the Medicaid program.

14. Defendant Michael O. Leavitt is the Secretary of HHS. In that capacity, he is responsible for the overall administration of HHS. Secretary Leavitt is sued in his official capacity.

## JURISDICTION AND VENUE

15. This case arises under the APA, 5 U.S.C. §§ 553, 702, 704, and 706(2), and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

16. Venue in this Court is proper under 28 U.S.C. § 1391(b) & (e), because Defendants reside in this District and because the actions giving rise to this case occurred here.

## FACTS

### Case Management in the Medicaid Program

17. The Medicaid program, established in Title XIX of the Social Security Act ("SSA"), is a cooperative state-federal program designed to enable States to furnish medical assistance to certain low-income, elderly, and disabled individuals whose income and resources are inadequate to pay for necessary medical services. *See* SSA § 1901, *codified at* 42 U.S.C § 1396. The Medicaid program is administered by each State in accordance with a Medicaid state plan that is reviewed and approved by the Defendants. States must comply with federal requirements specified in the SSA, as well as the regulations and program guidance issued by the Defendants pursuant to their authority under the SSA.

18. Under Medicaid, the federal government and the States share the cost of providing medical assistance to Medicaid-eligible persons, with federal financial participation ("FFP") ranging from fifty to eighty-three percent. *See* SSA § 1905(b), *codified at* 42 U.S.C. § 1396d(b). In addition, the costs of administrative activities are reimbursed at fifty percent. *See* SSA § 1903(a), *codified at* 42 U.S.C. § 1396b(a).

19. Since 1986, "case management" and "targeted case management" have been services that a State may elect to provide as a Medicaid benefit to Medicaid-eligible beneficiaries. *See* Consolidated Omnibus Reconciliation Act of 1985 (COBRA), Pub. L. No. 99-272, 100 Stat. 82 (1986); Tax Reform Act of 1986 (TEFRA), Pub. L. No. 99-514, § 1895(c)(3), 100 Stat. 2085 (1986). "Case management" is a service that assists beneficiaries in gaining access to needed medical, social, educational and other services. *See* 42 U.S.C. § 1396c(a)(19). "Targeted case management" is case management that is targeted to beneficiaries in a particular geographic location or with a particular diagnosis or condition, such

as individuals with developmental disabilities, individuals with mental illness, individuals with HIV/AIDS, children at risk of abuse and neglect, and foster care children in the custody of the State. *See* 42 U.S.C. § 1396n(g).

20. Even prior to the 1986 addition of "case management" and "targeted case management" as services under Title XIX, States had the authority to conduct case management as an administrative activity and to claim reimbursement for such activities at the 50 percent federal match rate for administration. *See* State Medicaid Manual § 4302.

21. Even prior to the 1986 addition of "case management" and "targeted case management" as services under Title XIX, States had the ability to provide services to certain Medicaid beneficiaries under the authority of SSA § 1915(c), *codified at* 42 U.S.C. § 1396n(c), which provides that a State plan may include as "medical assistance" payment for part or all of the cost of home or community-based services, including case management, to individuals who would otherwise require the level of care provided in a hospital, a nursing facility, or an intermediate care facility for the mentally retarded.

22. On January 19, 2001, CMS issued State Medicaid Director Letter 01-013, which "clarif[ies] HHS policy on targeted case management services under the Medicaid program as it relates to an individual's participation in other social, educational, or other programs." The letter states that "States may use eligibility for, or participation in, a state social welfare program or other programs as the basis for defining the target population among Medicaid eligible individuals." *Id.* The letter states that allowable case management services include assessment, care planning, referral and linkage, and monitoring and follow-up and that "Medicaid can be used to supplement these activities for Medicaid eligible individuals when they are embedded in another social or other program." *Id.*

23. As part of the Deficit Reduction Act of 2005 ("DRA"), Congress clarified the scope of case management and targeted case management services. *See* Pub. L. No. 109-171, § 6052, 120 Stat. 4 (2006). Section 6052 defines case management to include: (a) assessment of an eligible individual to determine the need for any medical, educational, social or other service; (b) development of a specific care plan based on the assessment; (c) referral and related activities to help an individual obtain needed services; and (d) monitoring and follow-up activities. *See* DRA § 6052(a)(2)(A)(ii). The DRA states that case management does not include the "direct delivery of an underlying medical, educational, social, or other service to which an eligible individual has been referred." *Id*. at (a)(2)(A)(iii).

24. Section 6052 further provides that "[i]n accordance with section 1902(a)(25) [of the SSA], Federal financial participation only is available under this title for case management services or targeted case management services if there are no other third parties liable to pay for such services, including as reimbursement under a medical, social, educational, or other program," DRA at § 6052(a)(4)(A), and that a State "shall allocate the costs of any part of such services which are reimbursable under another federally funded program in accordance with OMB Circular A-87 (or any related or successor guidance or regulations regarding allocation of costs among federally funded programs) under an approved cost allocation program," *id.* at (a)(4)(B).

25. The DRA was enacted on February 8, 2006. The case management provisions were effective retroactive to January 1, 2006. The DRA provides that "[t]he Secretary shall promulgate regulations to carry out the amendment made by subsection (a) which may be effective and final immediately on an interim basis as of the date of publication of the interim final regulation. If the Secretary provides for an interim final regulation, the Secretary shall

provide for a period of public comments on such regulation after the date of publication. The Secretary may change or revise such regulation after completion of the period of public comment." *Id*. at (b).

26.     The Secretary promulgated the Interim Final Rule on December 4, 2007, nearly two years after the DRA's case management provisions went into effect. The Secretary did not provide notice or seek comment on the Interim Final Rule prior to its publication in the Federal Register on December 4, 2007.

27.     Pursuant to SSA § 1915(c), *codified at* 42 U.S.C. § 1396n(c), the Secretary has authority to waive certain provisions of Title XIX otherwise applicable to Medicaid state plans, to provide States with greater flexibility over the delivery of home and community-based services ("HCBS") to individuals who, but for those services, would require the level of care provided in a hospital, nursing facility, or intermediate care facility. HCBS programs operated by States under the Secretary's § 1915(c) waiver authority are known as "Section 1915(c) waivers." Although the Interim Final Rule does not expressly state that its definition of "case management" will apply to Section 1915(c) waivers, CMS has since instructed States that case management provided through Section 1915(c) waivers will be subject to all of the requirements set forth in the Interim Final Rule.

**The Challenged Provisions of the Interim Final Rule  
Go Beyond the Secretary's Authority Under the DRA**

28.     The Challenged Provisions of the Interim Final Rule, described in paragraphs 30 through 38 of this Complaint, are not in accordance with the DRA and will have a detrimental impact on beneficiaries and substantially reduce federal funding to the Plaintiffs.

29. The DRA provides that "case management services" shall not include "the direct delivery of an underlying medical, educational, social, or other service to which an eligible individual has been referred," and provides examples of such underlying services with respect to the foster care program. *See* DRA § 6052(a)(2)(A)(iii). However, as described in the paragraphs below, the Interim Final Rule sets forth additional exclusions from the definition of case management services that are not in accordance with the DRA.

30. **Interim 42 C.F.R. § 441.18(c)(3)** is not in accordance with the DRA because it excludes not only "the direct delivery of foster care services," DRA § 6052(a)(2)(A)(iii), but also all case management activities that "are integral to the administration of foster care programs." The preamble to the rule demonstrates that CMS considers any activity, including "case management" itself, to be an activity "integral to the administration of foster care programs" if it is performed by a foster care worker. 72 Fed. Reg. at 68,087. The preamble further states that "Medicaid may not pay for case management services furnished by contractors to the State child welfare/child protective services agency, even if they would otherwise be qualified Medicaid providers, because they are furnishing direct services of the programs of that agency." *Id.* at 68,086. This would preclude Medicaid reimbursement for the provision of case management services by providers who are both child welfare providers and certified Medicaid providers, even if the services that are being provided fit within the definition of allowable Medicaid case management services and are not being billed as, and do not duplicate, child welfare services.

31. **Interim 42 C.F.R. § 441.18(c)(4)** is not in accordance with the DRA because it excludes not only the direct delivery of underlying services, DRA § 6052(a)(2)(A)(iii), but all case management activities that "are integral to the administration of another non-medical

- 9 -

program, such as a guardianship, child welfare/child protective services, parole, probation, or special education program except for case management that is included in an individualized education plan or individualized family service plan consistent with § 1903(c) of the [Social Security] Act." The rule also is not in accordance with DRA § 6052(a)(4)(A), in that other non-medical programs are not legally liable third parties within the meaning of SSA § 1902(a)(25).

32. **Interim 42 C.F.R. § 441.18(c)(5)** is not in accordance with the DRA because it provides that "[a]ctivities that meet the definition of case management services in § 440.169 and under the approved State plan cannot be claimed as administrative activities under § 433.15(b)." The DRA, in contrast, does not authorize the Secretary to restrict the States' longstanding ability to be reimbursed for case management as an administrative activity. To the contrary, DRA § 6052(a)(4)(B) requires a State to "allocate the costs of any part of such services which are reimbursable under another federally funded program in accordance with OMB Circular A-87 (or any related or successor guidance or regulations regarding allocation of costs among federally funded programs) under an approved cost allocation program."

33. **Interim 42 C.F.R. § 441.18(a)(3)** is not in accordance with the DRA because it provides that a State may not "compel an individual to receive case management services, condition receipt of case management (or targeted case management) services on receipt of other Medicaid services, or condition receipt of other Medicaid services on receipt of case management (or targeted case management) services." The DRA, in contrast, does not authorize the Secretary to restrict the longstanding and quite common practice among States of requiring the assessment, plan development, referral, and monitoring of vulnerable populations such as individuals with mental illness, individuals with developmental disabilities, frail elderly, and children in the custody of the State. These services are almost always mandatory for

individuals participating in Section 1915(c) waivers, which require that services be provided pursuant to a plan of care and which obligate the State to assure the health and safety of waiver participants receiving services in their homes and other community settings.

34.     **Interim 42 C.F.R. § 441.18(a)(5)** is not in accordance with the DRA because it provides that the State must provide comprehensive case management services to an individual through a single case manager. The DRA, in contrast, does not authorize the Secretary to limit Medicaid beneficiaries to a single case manager. Because case managers are generally knowledgeable and familiar with the provider networks for specific needs and diagnoses (*e.g.*, HIV/AIDS, mental illness, developmental disabilities, frail elderly), it is possible that beneficiaries who fall into more than one of these categories will have more than one case manager.

35.     **Interim 42 C.F.R. § 441.18(a)(8)(vi)** is not in accordance with the DRA because it requires that the State must have an approved Medicaid state plan amendment identifying all beneficiaries receiving case management services and that such amendment must specify that "rates are calculated [employing] a unit of service that does not exceed 15 minutes." The DRA, in contrast, does not authorize the Secretary to require any particular form of billing for this service. It is quite common for States to pay for case management on a weekly or monthly basis.

36.     **Interim 42 C.F.R. § 440.169(c)** is not in accordance with the DRA because it provides that case management may only be provided to an individual "transitioning to a community setting" during the last 60 days of a Medicaid-covered institutional stay that is 180 consecutive days or longer, or the last 14 days of a covered institutional stay of less than 180 consecutive days. The DRA, in contrast, does not authorize the Secretary to restrict the amount

of time that case management may be provided to an institutionalized individual transitioning to a community. Many States have approved Medicaid state plans providing for up to 180 days of transitional case management.

37.     **Interim 42 C.F.R. § 440.169(d)(3)** is not in accordance with the DRA to the extent that "referral and related activities" are interpreted to exclude the activity of accompanying an individual to an appointment to ensure that the individual receives care. 72 Fed. Reg. 68,082; *see also* 72 Fed. Reg. 68,085 (noting that "referral and related activities do not include the provision of transportation or escort services" on the theory that these are "direct services"). The DRA provides in § 6052(a)(2)(A)(ii)(III) that "referral and related activities" are a category of case management services intended "to help an individual obtain needed services." Because individuals with mental illness or developmental disabilities often cannot access services without assistance, many States permit case managers to accompany these individuals to services in order to assure access and compliance with a treatment regime. The DRA does not authorize CMS to exclude this activity, which is essential to help certain "individual[s] obtain needed services" and is not covered under any other Medicaid service category, from the definition of referral and related case management activities.

38.     In addition, the Plaintiffs challenge **Interim 42 C.F.R. § 441.18(a)(8)** to the extent that it requires a State to have an approved Medicaid state plan amendment for each group receiving case management services as of the effective date of the rule. The rule will become effective ninety days after publication in the Federal Register; the plan amendment approval process normally takes between 90 and 270 days following the submission of a proposed state plan amendment to CMS.

39. In addition to violating the DRA, the Challenged Provisions are also not authorized under any other provision of Title XIX.

### Plaintiff State Agencies and the Medicaid Beneficiaries They Serve are Harmed by the Challenged Provisions

40. Plaintiff state agencies are adversely affected and aggrieved by the Challenged Provisions.

41. The Challenged Provisions will eliminate federal Medicaid funding for the case management services that Kentucky provides to Medicaid-eligible individuals in the foster care program and other non-medical programs; it will limit individuals to one case manager, even though that case manager may not be familiar with the relevant diagnoses and provider networks; it will require the State to modify its reimbursement systems so that claims for the remaining case management services will be billed in 15-minute increments; and it will affect the operation of the State's 1915(c) waivers because the State will not be able to require that participants receive case management services.

42. The Challenged Provisions will eliminate federal Medicaid funding for the case management services that Maine provides to Medicaid-eligible individuals in the foster care program and other non-medical programs, including adult guardian and juvenile probation; it will limit individuals to one case manager, even though that case manager may not be familiar with the relevant diagnoses and provider networks; it will require the State to modify its reimbursement systems so that claims for the remaining case management services will be billed in 15-minute increments; and it will affect the operation of the State's 1915(c) waivers because the State will not be able to require that participants receive case management services.

43. The Challenged Provisions will eliminate federal Medicaid funding for the case management services that Maryland provides to Medicaid-eligible individuals in its child welfare programs and other non-medical programs; it will eliminate federal Medicaid funding for administrative activities claimed by Maryland; it will limit individuals to one case manager, even though that case manager may not be familiar with the relevant diagnoses and provider networks; it will require the State to modify its reimbursement systems so that claims for the remaining case management services will be billed in 15-minute increments; it will affect the case management provided to individuals transitioning from an institutional to a community setting by limiting the time period during which the service can be provided to a maximum of 60 days; and it will affect the operation of the State's 1915(c) waivers because the State will not be able to require that participants receive case management services.

44. The Challenged Provisions will eliminate federal Medicaid funding for the administrative activities that New Jersey claims in its child welfare programs; it will limit individuals to one case manager, even though that case manager may not be familiar with the relevant diagnoses and provider networks; it will require the State to modify its reimbursement systems so that claims for the remaining case management services will be billed in 15-minute increments; it will affect the case management provided to individuals transitioning from an institutional to a community setting by limiting the time period during which the service can be provided to a maximum of 60 days; and it will affect the operation of the State's 1915(c) waivers because the State will not be able to require that participants receive case management services.

45. The Challenged Provisions will eliminate federal Medicaid funding for the case management services that New York provides to Medicaid-eligible individuals in its child welfare programs and other non-medical programs; it will limit individuals to one case manager,

even though that case manager may not be familiar with the relevant diagnoses and provider networks; it will exclude the activity of accompanying an individual to an appointment to ensure that the individual receives care or services; it will require the State to modify its reimbursement systems so that claims for the remaining case management services will be billed in 15-minute increments; it will affect the case management provided to individuals transitioning from an institutional to a community setting by limiting the time period during which the service can be provided to a maximum of 60 days; and it will affect the operation of the State's 1915(c) waivers because the State will not be able to require that participants receive case management services and will preclude provision of such services by providers who are both child welfare providers and Medicaid providers.

46. The Challenged Provisions will eliminate federal Medicaid funding for the case management services that Oklahoma provides to Medicaid-eligible individuals in its child welfare programs and other non-medical programs; it will eliminate federal Medicaid funding for administrative activities claimed by Oklahoma; it will limit individuals to one case manager, even though that case manager may not be familiar with the relevant diagnoses and provider networks; it will require the State to modify its reimbursement systems so that claims for the remaining case management services will be billed in 15-minute increments; it will affect the case management provided to individuals transitioning from an institutional to a community setting by limiting the time period during which the service can be provided to a maximum of 60 days; and it will affect the operation of the State's 1915(c) waivers because the State will not be able to require that participants receive case management services.

47. The Challenged Provisions will eliminate federal Medicaid funding for the case management services that Tennessee provides to Medicaid-eligible individuals in its child welfare programs and other non-medical programs; it will limit individuals to one case manager, even though that case manager may not be familiar with the relevant diagnoses and provider networks; it will require the State to modify its reimbursement systems so that claims for the remaining case management services will be billed in 15-minute increments; it will affect the case management provided to individuals transitioning from an institutional to a community setting by limiting the time period during which the service can be provided to a maximum of 60 days; and it will affect the operation of the State's 1915(c) waivers because the State will not be able to require that participants receive case management services.

## COUNT I
### (Violation of APA Notice-and-Comment Rulemaking, 5 U.S.C. §§ 553, 706(2)(A),(C),(D))

48. Plaintiffs repeat and re-allege every allegation in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. The Interim Final Rule constitutes final agency action under the APA, 5 U.S.C. § 704.

50. Defendants' rules are subject to the rulemaking requirements of the APA. *See* 5 U.S.C. § 553; 36 Fed. Reg. 2532 (Feb. 5, 1971).

51. The Challenged Provisions do not fall within the provision of DRA § 6052(b).

52. The Challenged Provisions were not promulgated in accordance with the APA's notice-and-comment procedures as set forth in 5 U.S.C. § 553.

53. Defendants' actions were in violation of 5 U.S.C. § 553 and were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

54. Defendants' actions were in violation of 5 U.S.C. § 553 and were "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

55. Defendants' actions were in violation of 5 U.S.C. § 553 and were "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

## COUNT II
### (Arbitrary and Capricious Agency Action, 5 U.S.C. § 706(2)(A))

56. Plaintiffs repeat and re-allege every allegation in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

57. The Interim Final Rule constitutes final agency action under the APA, 5 U.S.C. § 704. Under the APA, 5 U.S.C. § 706(2)(A), this Court is required to hold unlawful and to set aside final agency action that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."

58. The Challenged Provisions are arbitrary, capricious, and not in accordance with § 6052 of the DRA or any other provision of Title XIX.

## COUNT III
### (Agency Action in Excess of Statutory Jurisdiction, Authority, or Limitations, 5 U.S.C. § 706(2)(C))

59. Plaintiffs repeat and re-allege every allegation in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

60. The Interim Final Rule constitutes final agency action under the APA, 5 U.S.C. § 704. Under the APA, 5 U.S.C. § 706(2)(C), this Court is required to hold unlawful and to set aside final agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

61. The Challenged Provisions are in excess of statutory jurisdiction, authority, or limitations set forth in § 6052 of the DRA or any other provision of Title XIX.

## COUNT IV
### (Abuse of Discretion, 5 U.S.C. § 706(2)(A))

62. Plaintiffs repeat and re-allege every allegation in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

63. The Interim Final Rule constitutes final agency action under the APA, 5 U.S.C. § 704. The Interim Final Rule does not provide a reasonable transition period for States to modify their case management programs to comply with the Challenged Provisions.

64. The failure to include a reasonable transition period is an abuse of CMS's discretion and violates the APA, 5 U.S.C. § 706(2)(A).

65. The Interim Final Rule was promulgated by CMS before providing States any opportunity for consultation or comment on the Challenged Provisions.

66. The failure to provide States any opportunity for consultation or comment on the Challenged Provisions prior to promulgation of the Interim Final Rule is an abuse of CMS's discretion and violates the APA, 5 U.S.C. § 706(2)(A).

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiffs ask this Court to award relief as follows:

**A.     Declaratory Judgment**

Plaintiffs ask this Court to issue a declaratory judgment that the Challenged Provisions of the Interim Final Rule are unlawful and without effect.

**B.     Injunctive Relief**

Plaintiffs ask this Court to enjoin Defendants and their agents, employees, successors in office, and all persons acting in concert or participation with them from enforcing or giving effect to the Challenged Provisions of the Interim Final Rule.

**C.     Other Relief**

Plaintiffs ask this Court to:

1. Order a speedy hearing of this matter and advance it on the calendar;

2. Award Plaintiffs their costs and reasonable attorneys' fees for this action;

3. Retain jurisdiction over this action for such additional and supplemental relief as may be required to enforce the order and judgment; and

4. Award Plaintiffs such other relief as may be just and proper.

Respectfully submitted,

   /s/ Joseph Zambuto, Jr.
Jay T. Smith (D.C. Bar No. 418559)
Caroline M. Brown (D.C. Bar No. 438432)
Joseph Zambuto, Jr. (D.C. Bar No. 484542)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
(202) 662-6000

*Attorneys for Kentucky, Maine, New Jersey, New York, Oklahoma, and Tennessee*

- 20 -

DOUGLAS F. GANSLER
ATTORNEY GENERAL OF MARYLAND

      /s/  Lorie A. Mayorga
Lorie A. Mayorga, (D.C. Bar No. 462068)
Assistant Attorney General
Room 302
300 West Preston Street
Baltimore, Maryland 21201
(410) 767 1860
*Attorney for Maryland Department of
Health and Mental Hygiene*

DATED: April 16, 2008